# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1835
Filed April 1, 2026

————————————

**In the Interest of K.S., Minor Child,**

**J.V., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Webster County,
The Honorable Joseph L. Tofilon, Judge.

————————————

**AFFIRMED**

————————————

Ernest Kersten (until withdrawal), Webster City, and Neven Conrad, Fort
Dodge, attorneys for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Brandy R. Lundy, Cedar Rapids, attorney and guardian ad litem for minor
child.

————————————

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights to a child born in 2022.[1] She challenges the grounds for termination, the reasonable efforts made by the State, and the denial of her request for more time. Because the mother admitted the child could not be returned to her custody at the time of the termination hearing, a statutory ground for termination is met. The mother has not shown she was denied reasonable efforts that would have affected that finding, and more time would not change the result. We therefore affirm.

## BACKGROUND FACTS AND PROCEEDINGS

In December 2024, the Iowa Department of Health and Human Services (HHS) opened its third case on the child based on concerns about living conditions in the family home. Although HHS offered family preservation services, the parents did not take part. The family's case worker opined that the parents did not care about the identified concerns or take them seriously.

The State petitioned to adjudicate the child in need of assistance (CINA) in January 2025. Although the child was almost three years old, he spoke only three words. The severe delay in the child's development resulted from parental neglect, as it appeared he had been left in either a room with only a light switch to turn on and off as entertainment or on a mattress in the living room while the parents played video games. The child was removed from the parents' custody and placed with the maternal grandmother. In February, the juvenile court granted the CINA petition based on "squalid"

---

[1] Although the juvenile court also terminated the father's parental rights, he did not appeal.

and unsafe conditions in the family home, as well as concerns about the parents' mental health.

In March, the child was placed with a paternal aunt and her family, where he has remained. The child's vocabulary grew, he began forming sentences and using sign language, and he started learning colors and numbers. The child also experienced physical growth, putting on "substantial weight" after removal. The case worker described the child as "thriving" in the aunt's home as the aunt actively engaged with the child's educators, healthcare providers, and daycare providers.

Unfortunately, the mother did not make the child a priority after his removal. Her participation decreased over time, and the mother asked for reduced visitation because five hours per week was "too much." Even then, the mother did not keep the reduced schedule. She did not attend the child's medical appointments and only began addressing her mental health in August, six months after the CINA adjudication.

In September, the State petitioned for termination of parental rights. After an October hearing, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e) and (h) (2025).

## SCOPE OF REVIEW

We review termination-of-parental-rights proceedings de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). While not binding on us, we give weight to the juvenile court's fact findings, "particularly with respect to credibility determinations." *Id.*

# DISCUSSION

## I. Did the State prove the grounds for terminating the mother's parental rights by clear and convincing evidence?

The mother first contends that the juvenile court erred by finding the State proved the grounds for termination. Although the juvenile court found sufficient evidence for terminating the mother's parental rights on two statutory grounds, we may affirm if the record supports one. *See In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). The court may terminate under section 232.116(1)(h) if it finds:

> (1) The child is three years of age or younger.
>
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother does not dispute that the first three elements for termination under section 232.116(1)(h) were met. She argues the evidence shows the child could be returned to her custody at the time of the termination hearing. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting the statutory phrase "at the present time" to mean the date of the termination hearing).

The mother's testimony at the termination hearing undercuts her argument on appeal:

> Q. Do you think you could take [the child] home with you today?
> A. I do not.

Q. Why not?  A. Just because of the condition right now of just constant, like, trying to get everything clean and stuff.  There's just stuff that I feel like wouldn't be very safe for him at the moment.  But once we get everything organized and figured out where everything is going to go, I think it will be beneficial for him.

These are the same concerns that HHS had for the child in December 2024, which led to the CINA adjudication.  The mother never showed progress in addressing those concerns.  She also lived in a two-bedroom home with two other adults and two children and admitted that background checks were needed to figure out whether the other adults present safety concerns.  Additionally, the mother waited until the eve of termination to begin addressing her mental-health concerns and she was not adhering to the visitation schedule even after it was reduced at her request.  Because clear and convincing evidence shows the child could not be safely returned to the mother's custody at the time of the termination hearing, termination is proper under section 232.116(1)(h).

## II.    Did the State make reasonable efforts toward reunification?

The mother next challenges the reasonable efforts made by the State toward reunification.  *See* Iowa Code § 232.102 (stating that HHS must "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child").  "The reasonable efforts requirement is not viewed as a strict substantive requirement of termination."  *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) (cleaned up).  Instead, "the State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."  *Id.* (cleaned up).

On appeal, the mother complains that she was given little credit for "seeking out and receiving" mental-health services.[2] These services were part of the case plan the mother had to complete before the child could be returned to her custody. The mother also claims that HHS did not address the transportation issues created by the child's placement aside from granting her request for FaceTime visits. But at the termination hearing, the mother blamed her work schedule for missing visits, not transportation. And the mother never addressed this concern with her boss or asked for accommodation. Instead, she requested less visitation with the child, not more, and still did not attend visits regularly. Even so, more visitation would not have resolved the issues that prevented returning the child to her custody. Thus, our finding that the child could not be returned to the mother's custody at the time of the termination hearing is not affected by any reasonable efforts the mother believes HHS should have been provided.

## III. Should the mother be granted more time for reunification?

Finally, the mother asks us to grant her a six-month extension in lieu of termination of parental rights. *See* Iowa Code § 232.104(2)(b) (allowing the court to continue a child's placement for up to six months if the need for the child's removal from the home will no longer exist at the end of that period). To delay permanency, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* The juvenile court could not make such a finding. We agree that the mother's lack of progress during the CINA proceedings casts doubt on her claim that

---

[2] We assume without deciding that this issue was preserved for our review and elect to reach the merits of the mother's reasonable efforts challenge.

the child can be returned to her custody in six months. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (considering "the parent's past performance" to show "the quality of the future care that parent is capable of providing").

"Time is a critical element" in termination proceedings, especially after the statutory grounds for termination have been established. *Id.* ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). The child's delayed development makes it clear that the mother could not provide the necessary care for the child at the time of the CINA adjudication. Nothing has changed. The mother did not take advantage of the services offered by HHS, and the concerns that led to the child's removal persisted. Nothing suggests that six more months will have a meaningful impact on the outcome of these proceedings. Meanwhile, the child is thriving in his current placement.[3] *See In re D.W.*, 791 N.W.2d 703,

---

[3] The report the guardian ad litem gave the court one day before the termination hearing best illustrates this:

> I first saw [the child] at the very beginning of this case and then got to see him in person again yesterday. This child is a completely different kiddo. He has grown, looks healthy, is talking, knows his colors/shapes/letters. What an amazing difference from the first date that I met him when he uttered a few noises and looked unhealthy with dark, sunken eyes. [The child]'s aunt and her family has done such a wonderful job of caring for him and helping him develop. They had recent testing and he [is] developmentally about 24 months—so roughly a year behind. They will be getting speech therapy and occupational therapy in place to help him catch up. He loves going to preschool. He also loves his cousins—his aunt has a younger child that is 2 years old and she reports that they are natural siblings at this point. [The child] was able to tell me about some of his favorite foods, including french fries. He is doing absolutely wonderfully and there are no concerns currently with him and his

708 (Iowa 2010) (finding the child's bond and integration with placement family favors terminating the mother's parental rights). We will not deprive the child of permanency based only on the hope that the mother will one day be able to execute her parental duties by providing a safe and stable home. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014); *D.W.*, 791 N.W.2d at 707 ("We do not gamble with the child['s] future by asking them to continuously wait for a stable biological parent." (cleaned up)). Because the mother has not shown that the child can be returned to her custody in six months or that delaying permanency is in the child's best interests, we affirm the termination of her parental rights. *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021).

**AFFIRMED.**

---

placement. Placement is currently working on getting licensed with the plan[] to adopt [the child].

Mom has not had an in person visit in over 8 weeks. She does do some virtual visits but had missed this week. . . .

. . . The parents were not able to care for the child, have not made meaningful progress, and the reasons for this do not seem to be an issue that would be remedied in the near future. . . . [T]ermination and adoption would be the best permanency plan for this child.